IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KENNETH E. ABBOTT, JR.,**            )
                                        )
       Plaintiff,                      )
                                        )
v.                                      )   **Civil No. 10-921-CJP**
                                        )
**MICHAEL J. ASTRUE**,                  )
**Commissioner of Social Security,**    )
                                        )
       Defendant.                      )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Kenneth E. Abbott, Jr., is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1]

## Procedural History

Mr. Abbott filed an application for benefits in September, 2008, alleging disability beginning on January 10, 2008. (Tr. 110, 113). His application was denied initially and on reconsideration. After holding a hearing, ALJ Gary L. Vanderhoof denied the application for benefits in a decision dated May 28, 2010. (Tr. 9-17). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 9.

1

Plaintiff argues that the ALJ erred in the following respects:

1. He erred in weighing the medical evidence in that he gave controlling weight to the opinions of an examining doctor, Dr. Feinerman, and discounted the opinions of plaintiff's treating doctor, Dr. Bancroft.

2. He erred in determining that plaintiff did not meet or equal the requirements of Listing 1.04A.

## **Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed;

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

(2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Abbott is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richard v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

3

## The Decision of the ALJ

ALJ Vanderhoof followed the five-step analytical framework described above. He determined that Mr. Abbott had not been engaged in substantial gainful activity since the alleged onset date, and that he has severe impairments of lumbar disc disease, status post lumbar fusion. Based in part on the testimony of an impartial medical expert, he further determined that these impairments do not meet or equal a listed impairment. The ALJ found that Mr. Abbott has the residual functional capacity to perform a limited range of work at the sedentary exertional level. The VE testified that he could perform jobs which exist in significant numbers in the national and local economy. The ALJ accepted this testimony, and found that he is not disabled. (Tr. 11-19).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1. Agency Forms**

Mr. Abbott was born in 1966, and was 41 years old when he allegedly became disabled. He was insured for DIB through December 31, 2012. (Tr. 125).

A Work History Report indicates that Mr. Abbott was the co-owner of a buffet-type restaurant in late 2007 and early 2008. Before that, he did warehouse work and sales/delivery for a magazine retailer. (Tr. 145, 155).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on May 5, 2010. (Tr. 25).

Dr. Dorothy Leong testified as an impartial medical expert.[3] (Tr. 26). Based upon a review of plaintiff's medical records, Dr. Leong testified that Mr. Abbott had complaints of low back pain. An MRI showed "crush to low disc versus scar tissue." A consultative examination report indicated that his neurological status was "unremarkable." An orthopedic doctor reported similar findings. (Tr. 27). Dr. Leong testified that Mr. Abbott would not meet or equal any of the Listings. She testified that he could lift 10 pounds occasionally and 5 pounds frequently, stand/walk for 2 hours total in a day, sit for 6 hours total, with no climbing or unprotected heights. He would need a cane to ambulate. (Tr. 26-28). Dr. Leong said that she considered Dr. Bancroft's opinion, but noted that the medical records from Dr. Bancroft's office "show that examinations basically are normal." (Tr. 29-30). She also noted that, in November, 2008, the medical records indicate that he was no longer having numbness down his right leg. (Tr. 30-31).

Mr. Abbott testified that he lived alone in a house. He has a drivers license and drives sometimes. He shops for groceries once a week or every 2 weeks. The heaviest thing he can lift is a half-gallon of milk. (Tr. 31-31). He testified that he has excruciating pain in his low back that goes into his right hip and left leg. (Tr. 33).

Plaintiff injured his back bungee jumping in 1993. He worked after that, until January, 2008. (Tr. 35).

Mr. Abbot lies down about 15 times a day in a fetal position to try to relieve his pain. (Tr. 36-37). He takes medication, but it does not reduce his pain. He can't go to the hospital because he has no way to pay for it. (Tr. 37-38). He testified that his doctors have recommended more surgery, but he is afraid to have it. (Tr. 39). He had spinal meningitis in

---

[3]This doctor is incorrectly referred to as "Dr. Leon" in the transcript. Her c.v. is at Tr. 108.

2004, which causes him neck pain and makes his eyes sensitive to sunlight. (Tr. 38).

James Lanier testified as a vocational expert. The ALJ asked him to assume a person who could lift 10 pounds occasionally and 5 pounds frequently, stand/walk for 2 hours total in a day, sit for 6 hours total, with no climbing or unprotected heights, and no working in direct sunlight. The VE testified that this person could not do plaintiff's past work, but could do the jobs of surveillance system monitor and circuit board tech assembler, which exist in significant numbers. Using a cane would not preclude these jobs. (Tr. 39-40).

**3.    Medical Records**

From 2003 through 2007, prior to the alleged onset of disability, Mr. Abbott received lumbar epidural injections from Dr. P. S. Sahni for back pain. (Tr. 208-211, 278-324). He contracted meningitis following a myelogram in 2004. He was released to return to work on July 29, 2004. (Tr. 298-308).

Plaintiff was seen by Dr. Bancroft at REA Clinic beginning in July, 2008. The records document continuing complaints of back pain, but the are no notations of limited range of motion or abnormal neurological findings through January, 2009. (Tr. 240-246).

Dr. Bancroft referred him to an orthopedic practice, the Orthopaedic Center of Southern Illinois. He was seen there by a nurse practitioner on September 25, 2008. He gave a history of having injured his back while bungee jumping. Dr. Sahni did surgery in 1993. Additional surgery was considered in 2004, but he contracted meningitis after a myelogram and did not have surgery. He was better for a while, but then starting having pain in his back and down his left leg. X-rays taken that day showed degenerative changes at L4-5, L5-S1. On examination, he had tenderness to his lower back and some limitation of range of motion. Strength and sensation were reduced in the left leg. Straight leg raising was positive. The impression was

back pain with left radiculopathy. He was prescribed medication. (Tr. 230).

A lumbar MRI was done on October 7, 2008. This showed a left-sided herniation at L4-5 with mass affect on the thecal sac. There were post-operative changes from a previous partial laminectomy at L4-5. There was also loss of disc space height and dehydration of disc material at L4-5. (Tr. 213).

On November 4, 2008, Mr. Abbott was seen at the Orthopaedic Center of Southern Illinois. Dr. Kovalsky reviewed his MRI film and agreed that he had degenerative changes at L4-5 with a small disc. He suggested that Mr. Abbott have an epidural steroid injection. On examination, he was neurologically intact with tenderness in the lumbar region and into the right sacroiliac joint. (Tr. 226). On the next day, plaintiff received an epidural steroid injection at L4-5 and L5-S1, which gave him some relief. (Tr. 227-228).

Dr. Feinerman did a consultative examination on November 24, 2008. Mr. Abbott gave a history of having injured his back bungee jumping in 1993, followed by fusion surgery. He complained of back pain and left leg pain, and said he could not bend or lay flat. He also said his hands and feet go numb. He said that he could walk for 20-25 feet, stand for 15-20 minutes, sit for 15-20 minutes and perform fine and gross manipulations normally. He said he could not squat or bend. On examination, he was 6'1" tall and weighed 241 pounds. He had decreased range of motion of the cervical and lumbar spine. Ambulation was normal without an assistive device. He could walk 50 feet. He was able to tandem walk, walk on heels and toes, hop and rise from a chair. He had difficulty squatting. He had no muscle spasm or atrophy. Muscle strength was normal throughout, and his grip strength was full and equal. Sensory examination was normal. Deep tendon reflexes were normal and equal. Dr. Feinerman was unable to do straight leg raising testing because movement of the legs caused back pain. The diagnostic

7

impression was lumbar disc disease. In his summary, Dr. Feinerman said that plaintiff was able to sit, stand and walk normally, and he was able to lift, carry and handle objects without difficulty. (Tr. 215-223).

On November 25, 2008, plaintiff was seen again at the Orthopaedic Center of Southern Illinois. On examination of the lumbar spine, it was noted that he "ambulates without any difficulties" and he was neurologically intact. He said he had gotten relief from the steroid injection, but was again having back pain and pain into his leg. He was not having numbness in his right leg any more. The plan was to do a repeat injection. He noted that he had a "medical card," but it would expire at the end of the month. (Tr. 225).

State agency physician Ernst Bone, M.D., completed a Physical RFC Assessment on December 3, 2008. He determined that plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, stand and/or walk 6 out of 8 hours and sit for 6 out of 8 hours. His ability to push and/or pull with upper extremities and operate foot controls was unlimited. He had some postural limitations, including never using ladders, ropes or scaffolds. The only manipulative limitation was in the area of reaching. He had no visual or communicative limitations. The only environmental limitation was to avoid concentrated exposure to hazards such as machinery and heights. (Tr. 231-238).

Mr. Abbott continued to see Dr. Bancroft in 2009. (Tr. 256-261). The hand-written notes are brief and are difficult to read. On September 11, 2009, the doctor wrote that he needed more pain medication and that his pain was not well-controlled. She also wrote that he could not afford to see a specialist or have an MRI. (Tr. 257).

Dr. Bancroft completed a Medical Source Statement on October 12, 2009, in which she indicated that plaintiff had severe limitations. She indicated he could never lift or carry any

8

weight, not even less than 10 pounds, and that he could sit, stand, and walk for only 2 hours each per day. When asked to identify the findings which support her assessment, she wrote that a lumbar MRI showed L4-5 disc herniation. She also wrote that he could never reach overhead or push/pull, and could never climb, balance, stoop, kneel, crouch or crawl. (Tr. 263-268).

The transcript contains medical records which post-date the ALJ's decision. See, Tr. 270-277, 325-328. This evidence was submitted to the Appeals Council, which denied review. This evidence cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. **Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008); Rice v. Barnhart, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).**

## Analysis

Plaintiff first takes issue with the ALJ's weighing of the medical opinions. He argues that the ALJ erred in accepting the opinions of the consultative examiner, Dr. Feinerman, and discounting the opinions of his treating doctor, Dr. Bancroft.

With respect to Dr. Feinerman's report, plaintiff argues that the ALJ focused only on the conclusions section of the report, and ignored the range of motion findings. Plaintiff is incorrect. The ALJ did not ignore the range of motion findings. Rather, he clearly stated that Dr. Feinerman found limited range of motion of the cervical and lumbar spine. In addition, the ALJ noted that Dr. Feinerman was unable to do a straight leg raising test due to back pain. (Tr. 13). However, despite those limitations, Dr. Feinerman concluded that Mr. Abbott was able to sit, stand, and walk normally. See, Tr. 219. Further, plaintiff ignores the fact that the ALJ's findings as to RFC were more restrictive than Dr. Feinerman's conclusions. The ALJ limited plaintiff to only 2 hours total of standing and/or walking, and assigned significant postural limitations.

9

Plaintiff argues that it was error to give little weight to the opinion of his treating doctor, Dr. Bancroft. His argument on this point consists of little more than a recitation of the language of the regulation on evaluating opinion evidence, 20 C.F.R. §404.1527.

A treating physician's opinion is, of course, not automatically entitled to controlling weight. Such an opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

Here, ALJ Vanderhoof said that he gave "little weight" to Dr. Bancroft's assessment of October 12, 2009, because it was "not supported by the objective medical evidence." (Tr. 14). This was not error. "[T]he opinion of a treating physician is entitled to controlling weight only if supported by objective medical evidence." ***Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010)**. Dr. Bancroft's office notes are brief and contain no record of objective medical findings except for a reference to a lumbar MRI which showed L4-5 disc herniation. Dr. Bancroft's opinion was not supported by objective medical findings and was inconsistent with other evidence, i.e., Dr. Feinerman's report and the records from the Orthopaedic Center of Southern Illinois. Therefore, it was not error to give little weight to Dr. Bancroft's assessment.

In addition, to the extent that plaintiff argues that the ALJ was bound to accept Dr. Bancroft's opinion as to his RFC, he is mistaken. SSR96-8p instructs that the "RFC assessment must be based on *all* of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, etc. SSR96-8p, at *5 (emphasis in original). Opinions of treating doctors regarding RFC are *not* given any special weight because the issue of RFC is an issue that is reserved to the Commissioner. See, 20 C.F.R. §416.927(e). SSR 96-59 explains:

> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

SSR 96-5p, at *2.

Mr. Abbott's final point is that the ALJ erred in concluding that he did not meet or equal the requirements of Listing 1.04A.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled. In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The requirements of Listing 1.04A are:

> Disorders of the spine (e.g., herniated nucleus pulposus, ... degenerative disc disease ...) resulting in compromise of a nerve root ... or the spinal cord. With
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Plaintiff bears the burden of proving that he meets or equals a listed impairment. ***Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999).** Mr. Abbott does not even attempt to demonstrate that he meets all of the requirements of Listing 1.04A. He does have a herniated disc. However, the record does not establish that he has motor loss and sensory or reflex loss. Dr. Feinerman found no evidence of same in his examination. The records from the Orthopaedic Center of Southern Illinois document that he was neurologically intact. (Tr. 225, 226). Further, Dr. Leong testified that plaintiff had normal neurological examinations, without motor or reflex

11

loss, and that he did not meet or equal a Listing. (Tr. 27, 30-31).

## Conclusion

After careful review of the record as a whole, the Court finds that the ALJ committed no errors of law, and that the findings of the ALJ are supported by substantial evidence.

The final decision of the Commissioner of Social Security denying the application of Kenneth E. Abbott, Jr., for Disability Insurance Benefits and Supplemental Security Income is **AFFIRMED.**

**The Clerk of Court is directed to enter judgment in favor of defendant.**

**IT IS SO ORDERED.**

**DATED: November 21, 2011.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**